# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALOHA AIRGROUP, INC., a<br>Hawaii corporation,<br><br>      Debtor.<br><br>―――――――――――――<br><br>This document relates to:<br><br>ALL CASES | Case No. 04-3063<br>Chapter 11<br><br>Jointly Administered<br>Honorable Robert J. Faris<br><br>Related Docket No. 35 |

## MEMORANDUM DECISION ON RETENTION OF
## FINANCIAL ADVISORS (GIULIANI CAPITAL ADVISORS LLC)

      The Debtors seek authority to retain Giuliani Capital Advisors LLC ("GCA") as their financial advisors. The Office of the United States Trustee ("UST") objected on several grounds. With one exception, all of the UST's objections have been decided[1] or resolved by modifications of the proposed retention agreement.[2] The exception is the provision that eliminates GCA's

---

    [1]The UST argued that GCA is not "disinterested" within the meaning of section 327(a) because the chapter 11 trustee of Hawaiian Airlines, Inc., one of Aloha Airlines' principal competitors, has also retained GCA as his financial advisor. For reasons stated orally on the record, I overruled that objection.

    [2]GCA and the Debtors have agreed (among other things) to remove provisions which would have waived possible claims against GCA's affiliates, limited GCA's liability to the amount of fees paid to GCA, and eliminated GCA's liability for consequential, incidental,

potential liability to the Debtors other than for claims arising primarily from GCA's gross negligence or willful misconduct (the "Waiver").[3] The practical effect of the Waiver is to prevent the Debtors from asserting claims against GCA based on GCA's ordinary negligence, as opposed to gross negligence, willful misconduct, or fraud.

The question presented is whether a financial advisor to a chapter 11 debtor can condition its engagement on the debtor's prospective waiver of claims for ordinary negligence. I conclude that there is no per se rule precluding such provisions and the Waiver is reasonable for this particular professional in the circumstances of this particular case.

Section 328(a) provides that a debtor in possession may, subject to court approval, retain "a professional person . . . on any reasonable terms and

---

indirect, punitive, or special damages. GCA and the Debtors have also agreed to add provisions requiring this court's approval before indemnification payments are made and making this court the sole proper forum to decide any claims under the agreement.

[3]"The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for Losses of the Company that are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services." GCA and the Debtors agreed to remove provisions which purported to protect GCA from liability to parties other than the Debtors.

2

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 444   Filed 02/24/05   Page 2 of 6

conditions of employment . . . ." A few early cases hold (or at least suggest) that indemnification and exculpation provisions similar to the Waiver are never reasonable under section 328. See, e.g., In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991) (such provisions are "inappropriate" and "inconsistent with professionalism"). More recently, however, nearly all courts agree that, while such provisions require careful scrutiny, they are not unreasonable per se. In re United Artists Theatre Company, 315 F.3d 217, 229 (3d Cir. 2003); In re DEC Intern., Inc., 282 B.R. 423, 429 (W.D. Wis. 2002); In re Metricom, Inc., 275 B.R. 364, 369 (Bankr. N.D. Cal. 2002). The UST acknowledges that no per se rule either prohibits or permits such provisions.

I am satisfied that the Debtors and GCA have carried their burden of showing that, in the circumstances of this particular case, the Waiver is a "reasonable" term of GCA's retention. GCA and the Debtors have established that such provisions are standard in the market for financial advisors in restructuring situations, that GCA ordinarily insists on including such provisions in its retention agreements (except in situations where applicable law prohibits them), that GCA would not accept the Debtor's engagement without such provisions, that the Debtors probably could not retain a financial advisor without agreeing to terms like the Waiver, and that the Debtors absolutely require the assistance of a competent

3

and experienced financial advisory firm such as GCA.

To justify its insistence upon the Waiver, GCA argues that the prospect of "Monday morning quarterbacking" in the guise of a lawsuit alleging ordinary negligence gives financial advisors an incentive to provide overly conservative advice. This argument is unpersuasive on both logical and policy grounds. Logically, the ordinary negligence standard does not give professionals an incentive to be either aggressive or cautious, because it is equally possible to be negligent if one is either unduly bold or unduly conservative. As a matter of policy, the rules of liability should be designed to encourage advisors, not to be bold or conservative in all cases, but rather to use their best efforts to give advice which is right for the particular client and circumstances.

For better or worse, however, the policy consensus appears to favor GCA's position. Although the law of corporate governance has been strengthened to some extent in response to recent massive corporate frauds, nothing in applicable nonbankruptcy law prohibits companies from waiving their own potential claims for ordinary negligence against their financial advisors. Further, applicable nonbankruptcy law permits corporations to limit dramatically the liability of their own directors. Haw. Rev. Stat. § 414-222 (2004). Although one could reasonably question the wisdom of such enactments, it would be anomalous

4

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 444   Filed 02/24/05   Page 4 of 6

to permit corporations to limit their directors' liability but prohibit them from limiting their outside consultants' liability.

It is also significant that the Waiver is quite narrow. The retention agreement does not purport to protect GCA against the consequences of its own "gross" negligence. Generations of law professors have tormented their students by requiring them to distinguish "ordinary" from "gross" negligence. Many courts have also made the attempt. See Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 85 Haw. 286, 293, 944 P.2d 83, 90 (1997); In re United Artists Theatre Co., 315 F.3d at 230-31. Despite all of this effort, the distinction remains hazy. The protection for which GCA has bargained is limited and its responsibility and potential liability remain substantial.

The UST also argues that the Waiver should not be approved because GCA could not obtain comparable protection pursuant to a plan. I disagree with the premise. It is true that, under the principle that the bankruptcy court cannot discharge liabilities of non-debtors, a plan cannot extinguish third parties' claims against the debtor's professionals. Nothing prevents confirmation of a plan, however, which waives or settles the estate's claims against the professionals, so long as the terms of the settlement are appropriate. GCA and the Debtors have modified the retention agreement so that it no longer purports to protect GCA from

5

U.S. Bankruptcy Court - Hawaii   #04-03063    Dkt # 444    Filed 02/24/05    Page 5 of 6

claims by third parties.

Finally, the UST argues that the court should consider the Waiver in light of the fact that GCA will receive a substantial monthly fee regardless of how much it actually works and will seek a bonus, called a "Restructuring Fee," if certain conditions are met. I have previously determined that the monthly fee payable to GCA is reasonable, and the UST has withdrawn its objection to that aspect of the application. I expect that the Debtors will carefully review their continuing need for GCA's assistance and will terminate the retention or seek a modification of the monthly fee if that fee becomes disproportionate to the effort expended by GCA. The bonus is subject to subsequent approval. The extent of the risk taken by GCA will be a factor (among many others) in determining whether and to what extent a bonus should be allowed. The uncertain prospect of a bonus does not, however, render the Waiver unreasonable.

The Debtors are directed to submit a proposed order approving the retention of GCA pursuant to the modified retention agreement.

DATED: Honolulu, Hawaii, February 24, 2005.

/s/ Robert J. Faris
United States Bankruptcy Judge

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 444   Filed 02/24/05   Page 6 of 6