# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Case No. 04-03063 |
| | ) | Chapter 11 Case |
| ALOHA AIRGROUP, INC., et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Honorable Robert J. Faris |
| _____ | ) | |
| | ) | Confirmation Hearing: |
| This document relates to: | ) | Date: November 28, 2005 |
| | ) | Time: 9:30 a.m. |
| ALL CASES | ) | Judge: Hon. Robert J. Faris |
| _____ | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CONNECTION WITH CONFIRMATION OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION DATED AS OF OCTOBER 26, 2005

**WHEREAS**, Aloha Airgroup, Inc. and Aloha Airlines, Inc., debtors and debtors-in-possession herein (collectively, the "Debtors"), and Yucaipa Corporate Initiatives Fund I, L.P. ("Yucaipa"), as "joint proponents of the plan" (collectively, the "Plan Proponents") within the meaning of section 1129 of title 11, United States Code (the "Bankruptcy Code"), filed the First Amended Joint Plan Of Reorganization Dated As Of October 26, 2005 (the "Plan") and the First Amended Disclosure Statement For The First Amended Joint Plan Of Reorganization Dated As Of October 26, 2005 (the "Disclosure Statement") in the above-captioned chapter 11 cases (the "Chapter 11 Cases");[1]

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which as confirmed by the Bankruptcy Court is annexed hereto as Exhibit "A." Any term used in the Plan or these Findings of Fact that is not defined in the Plan or these Findings of Fact, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**WHEREAS**, on October 28, 2005, the Bankruptcy Court entered an order (the "Solicitation Procedures Order") that, among other things, (a) approved the adequacy of the Disclosure Statement under Bankruptcy Code section 1125 and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (b) approved various procedures with respect to the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (c) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (d) established certain procedures for soliciting and tabulating votes with respect to the Plan;

**WHEREAS**, in accordance with the Solicitation Procedures Order, (i) the Disclosure Statement, (ii) the Confirmation Hearing Notice, and (iii) with respect to those creditors in classes entitled to vote under the Plan and the Solicitation Order (x) a ballot and return envelope (such ballot and envelope being referred to as a "Ballot"), and (y) a letter from the Official Committee, were transmitted as set forth in the Corrected Affidavit of Mailing of Cassandra Murray sworn to on November 3, 2005 and the Supplemental Affidavit of Mailing of Cassandra Murray sworn to on November 9, 2005 (collectively, the "Murray Affidavit"), and such service is adequate and proper as provided by Bankruptcy Rule 3017(d);

**WHEREAS**, in accordance with the Solicitation Procedures Order, the Confirmation Hearing Notice (as defined in the Solicitation Order) was

2

transmitted as set forth in the Murray Affidavit, and such service is adequate and proper as provided by Bankruptcy Rule 3017(d);

**WHEREAS**, in accordance with the Solicitation Procedures Order, the Confirmation Hearing Notice was published in The Wall Street Journal (National Edition) as set forth in the affidavit of publication attesting to such publication in accordance with the Solicitation Procedures Order;

**WHEREAS**, on November 23, 2005, the Plan Proponents filed the Plan Supplement with respect to the Plan, which may be further amended from time to time;

**WHEREAS**, the Plan Proponents filed the Declaration of Cassandra Murray Certifying the Methodology For The Tabulation Of Votes On And Results On Voting With Respect To The First Amended Plan Of Reorganization sworn to on November 22, 2005, attesting and certifying the method and results of the ballot tabulation for the Classes of Claims and Interests entitled to vote to accept or reject the Plan (as supplemented, corrected, or amended, the "Voting Report") and the Declaration of Diane Streany Certifying The Amended Ballot Report Regarding Acceptances and Rejections With Respect To The Debtors' First Amended Joint Chapter 11 Plan of Reorganization Dated As of October 26, 2005 (the "Amended Voting Report");

3

WHEREAS, as set forth on the annexed Exhibit "A," 19 objections or purported objections to confirmation of the Plan, were filed and served (the "Objections");

WHEREAS, certain of the Objections have been withdrawn or partially resolved on the terms and conditions described on the record of the Confirmation Hearing or memorialized in the Plan or the Confirmation Order (collectively, the "Resolved Objections"), and the remaining Objections are overruled on the merits pursuant to the Confirmation Order;

WHEREAS, no Person presented evidence in opposition to Confirmation of the Plan;

WHEREAS, on November 23, 2005, the Debtors introduced into evidence exhibits 1 -8 consisting of the declarations of David A. Banmiller, President and Chief Executive Officer of the Debtors, Jeffrey R. Kessler, Sr. Vice President and Chief Financial Officer, Marc A. Bilbao of Giuliani Capital Advisors, LLC and Richard d'Abo, the Debtors; Projections and related assumptions (2005 – 2009), the Liquidation Analysis for Aloha Airlines, Inc., and the Liquidation Analysis for Aloha Airgroup, Inc. (the "Confirmation Evidence");

WHEREAS, on November 23, 2005, the Plan Proponents filed and served an omnibus response to the Objections (the "Response");

4

**WHEREAS**, the Confirmation Hearing commenced on November 28, 2005 and continued on November 29, 2005, at which time the Court considered the evidence presented and the arguments of counsel; and

**NOW, THEREFORE**, based upon the Court's review of the Voting Report, Objections, Confirmation Evidence, Response; and upon (a) all the evidence proffered or adduced at, memoranda and pleadings filed in connection with, testimony presented in connection with, and arguments of counsel made at, the Confirmation Hearing; and (b) the entire record of these Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefore, the Court has made the findings of fact and conclusions of law set forth herein (the "Findings of Fact") and has entered an Order confirming the Plan (the "Confirmation Order"):

## IT IS HEREBY FOUND AND DETERMINED THAT:[2]

### Jurisdiction and Venue

1.	This Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § l57(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine

---

[2]	Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

CH\801607.4

whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Evidence and Burden of Proof

2.      This Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

3.      The Plan Proponents have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of evidence.

### Notice and Solicitation

4.      Notice of the Confirmation Hearing, and copies of the Plan, Disclosure Statement, Ballots and ancillary documents were distributed to all Holders of Claims and Interests in accordance with the Local Rules of the United States Bankruptcy Court for the District of Hawaii (the "Local Bankruptcy Rules"), the terms of the Disclosure Statement Order, the Bankruptcy Rules, and relevant orders of this Court.

CH\801607.4

5.     Notice of the Confirmation Hearing, including by publication in the national edition of the <u>Wall Street Journal</u> in accordance with the Disclosure Statement Order, and the opportunity to object to the Plan was adequate and appropriate under the circumstances, met all of the requirements for such notice contained in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and relevant orders of this Court, and complied in all respects with due process.

6.     Adequate information concerning the provisions of the Plan, within the meaning of section 1125 of the Bankruptcy Code, was timely disseminated to all Holders of Claims and Interests and other parties entitled to notice of the Confirmation Hearing.

7.     The timeframes established for submitting votes on the Plan and the procedures by which ballots for acceptance or rejection of the Plan were solicited and tabulated were fair and were properly conducted in accordance with the Bankruptcy Rules (including Bankruptcy Rules 2002(c)(3), 3017 and 3018), the Bankruptcy Code (including sections 1125 and 1126), relevant orders of this Court, and all other applicable laws, rules and regulations.

8.     The Voting Declaration satisfies the requirements of Bankruptcy Rule 3018.

CH\801607.4

9.     The Plan Proponents, as the proponents of the Plan, have complied with all the requirements of the Bankruptcy Code, including, without limitation, Section 1129 of the Bankruptcy Code.

10.     The Voting Declaration, and the supporting evidence, is sufficient proof that the Plan has been duly accepted in writing by the Classes whose acceptance is required by law for confirmation of the Plan, and satisfies the requirements of sections 1126 and 1129 of the Bankruptcy Code.   No vote accepting or rejecting the Plan has been solicited or obtained by improper means or in violation of the Bankruptcy Code, public policy or other applicable law.

### Negotiation of the Plan

11.     The Debtors have been plagued by the unprecedented staggeringly high cost of fuel.  The increases in the cost of aviation fuel, and the Debtors' soft revenues during the summer season, caused defaults under the Senior DIP Loan, and in July, the Debtors' Senior DIP Lenders declared defaults under the Senior DIP Loan.  In August, 2005, the Senior DIP Lenders declared additional defaults and for a short period of time, refused to make any additional advances under the Senior DIP Loan, and would not commit to funding the Debtors' operation through any resolution of the Debtors' reorganization.  September and October are the Debtors' slowest and least profitable months of the year.  By mid-

8

September, the Debtors were in dire need of a partner who could infuse funding and advance the Debtors' reorganization.

12.     The Debtors had tried since prior to the Petition Date to find an investor, buyer or plan sponsor.  Beginning several months before the Petition Date and continuing through mid-September, the Debtors and their financial advisors approached more than forty-five (45) lenders and investors in an effort to explore potential sources for post-petition financing and plan sponsorship or a sale of all or substantially all of the Debtors' assets.  Twenty-three (23) of these contacts led to signed confidentiality agreements, and eighteen (18) to initial presentations with the Debtors' senior management.  The Debtors ultimately engaged in discussions with nine (9) parties who expressed what the Debtors considered to a serious interest in providing financing, becoming a plan sponsor or acquiring the Debtors' assets.

13.     Despite the Debtors' continuing efforts, between March 23, 2005 and September 15, 2005, no third party had proposed a satisfactory transaction to enable the Debtors to reorganize – whether through a plan of reorganization or asset sale under Section 363.  Moreover, during that time period, the Senior DIP Lenders alleged that the Debtors had defaulted under the Senior DIP Loan, stopped advancing loans to the Debtors for a brief period of time and,

9

thereafter, limited the Debtors' availability under that facility.  With soaring fuel prices and limited access to funding under the Senior DIP Loan, the Debtors were operating under difficult conditions.

14.     On September 15, 2005, however, the Debtors' senior management, financial advisors and lawyers first met with representatives of the Plan Investors and their financial and legal advisors.  The Debtors and the Plan Investors worked long days, nights and over weekends to negotiate a transaction which forms the basis of the Plan.   The Plan is the only available path towards reorganization, full payment of the Senior DIP Loan, preservation of jobs and a viable trading partner for the Debtors' customers and vendors, and a return to unsecured creditors.

### Bankruptcy Code Requirements For Confirmation
### 1129(a)(l)

15.     The Plan complies with the applicable provisions of the Bankruptcy Code including, without limitation, sections 1122 and 1123. Therefore, the Plan satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

16.     In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, the Plan designates 7 Classes of Claims and

10

1 Class of Interests. Each Class is deemed to be separately classified, and has all rights associated with separate classification under the Bankruptcy Code. The Claims and Interests placed in each Class (or subclass, as applicable) are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan satisfies sections 1122 and 1123(a)(l) of the Bankruptcy Code.

17.     The Plan classifies all Claims and Interests required to be classified in satisfaction of the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

18.     Each Claim within each Class provided for under the Plan is substantially similar to all other Claims within such Class in satisfaction of the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

19.     The Plan specifies the Classes of Claims and Interests that are impaired and those that are not impaired, and the treatment of such Claims, in satisfaction of the requirements of sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

CH\801607.4
U.S. Bankruptcy Court - Hawaii    #04-03063   Dkt # 1948   Filed  11/29/05   Page 11 of 29

20.     The Plan provides the same treatment for each Claim or Interest of a particular Class, unless the Holder of such Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in writing.  As a result, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

21.     Section V of the Plan provides adequate means for implementation of the Plan in satisfaction of the requirements of section 1123(a)(5) of the Bankruptcy Code and all such provisions are considered fair and reasonable.

22.     The Plan provides that the Amended Organizational Documents for the Reorganized Debtors shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code.   Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

23.     The Plan provides for a manner of selection of the Debtors' directors and officers that is consistent with the interests of the Holders of Claims and Interests and public policy in satisfaction of the requirements of section 1123(a)(7) of the Bankruptcy Code.

**1129(a)(2)**

CH\801607.4

24.     The Debtors and Yucaipa, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code including, without limitation, sections 1125 and 1126, and therefore have satisfied the requirements of section 1129(a)(2), as follows:   (i) the Debtors are proper debtors pursuant to section 109 of the Bankruptcy Code and are, collectively, a proper proponent of the Plan pursuant to section 1121(a) of the Bankruptcy Code; (ii) the Plan Proponents have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court; and (iii) the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

**1129(a)(3)**

25.     The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1l29(a)(3) of the Bankruptcy Code.   The financial accommodations to be extended pursuant to the documents related to the Exit Financing (whether or not such financing includes a revolving line) are being extended in good faith, at arms' length, and for legitimate business purposes.   The good faith of the Plan Proponents is evident from the facts and records of these Chapter 11 Cases, the findings set forth herein, the Disclosure

13

Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.

### 1129(a)(4)

26. As required by section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan, has been disclosed to the Court and, if outside the ordinary course of business, has been approved by or subject to the approval of the Court.

### 1129(a)(5)

27. By including a list of officers with biographical information in the Disclosure Statement and filing with this Court a list of the proposed directors of the Reorganized Debtors, the Debtors have disclosed the identity and principal affiliations of proposed officers and directors of the Reorganized Debtors. The appointment or continuance of employment of the proposed directors and officers, as provided for in Section 5.04 of the Plan, is consistent with the interests of the Holders of Claims and Interests and public policy. Thus, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

CH\801607.4

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1948   Filed  11/29/05   Page 14 of 29

**1129(a)(6)**

28.     The Plan does not provide for any changes in rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

**1129(a)(7)**

29.     The liquidation analyses provided in the Disclosure Statement and other evidence proffered or addressed at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence and (iii) establish that, taking into account the modifications to the Plan ordered by the Court and reflected in the Confirmation Order pertaining to certain policies of insurance, with respect to each impaired Class of Claims or Interests, each Holder of a Claim or Interest of such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if each of the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date, and therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

15

**1129(a)(8)**

30.     The Plan has been rejected by the holders of Claims in Class 4, and is deemed rejected pursuant to section 1126(g) of the Bankruptcy Code by the holders of Claims and Interests in Classes 5, 6, 7 and 8 who will receive no distribution and retain no interest on account of their respective Claims or Interests.

31.     With respect to each Class of Claims or Interests classified by the Plan, other than Classes 4, 5, 6, 7 and 8 (the "Rejecting Classes"), either:  (a) such Class has accepted the Plan; or (b) such Class is not impaired under the Plan. Accordingly, the requirements of Section 1129(a)(8) of the Bankruptcy Code have been satisfied with respect to all Claims and Interests other than those in Classes 4, 5, 6, 7 and 8.  The Plan nevertheless may be confirmed because, as demonstrated below in below, the requirements of Section 1129(b) of the Bankruptcy Code are satisfied.

**1129(a)(9)**

32.     The Plan complies with section 1129(a)(9) of the Bankruptcy Code in that:  (i) the Plan provides that each entity holding an Allowed Administrative Expense Claim will be paid cash in the full amount of the Allowed Expense Administrative Claim (by the applicable Debtor) on or before the later of (a) the Effective Date or as soon as practicable thereafter unless the holder and the

16

Debtors or Reorganized Debtors, as the case may be, and Yucaipa agree in writing to other treatment of such Claim and (b) sixty (60) days after such Claim becomes Allowed; and (ii) the Plan provides that each Holder of an Allowed Priority Tax Claim will be paid in full in Cash over a six-year period from the date of assessment, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, at an interest rate approved by this Court

**1129(a)(10)**

33.     Each subclass in Class 1 (Allowed Secured Claims against each of the Debtors) that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

**1129(a)(11)**

34.     The financial projections in Exhibit F to the Disclosure Statement and the testimony and evidence presented, proffered or adduced at the Confirmation Hearing regarding the value of the Debtors' assets are: (i) persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the

CH\801607.4

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1948   Filed  11/29/05   Page 17 of 29

Debtors or the Reorganized Debtors. The Plan therefore satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

### 1129(a)(12)

35. The Plan provides that all fees pursuant to 28 U.S.C. § 1930 that become payable on or before the Confirmation Hearing have been or will be paid on or before the Effective Date. Therefore, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### 1129(a)(13)

36. On and after the Effective Date, subject to the Debtors' collective bargaining agreements, the Reorganized Debtors will continue to pay all "retiree benefits" (as defined in Bankruptcy Code section 1114(a)), at the level established pursuant to Bankruptcy Code section 1114, for the duration of the period the Debtors have obligated themselves to provide such benefits; provided, however, that nothing herein or the Plan shall relieve any third party of providing retiree benefits to the extent such third party has assumed the obligation of the Debtors to do so.

### 1129(b)

37. The requirements of section 1129(b) of the Bankruptcy Code are satisfied because (i) holders of unsecured claims in Classes 4, 5, 6 and 7 will

18

not receive or retain on account of such junior claims or interests and (ii) holders of interests in Class 8 will receive no less under the Plan than they would on account of any fixed liquidation preference, the redemption price to which they are entitled, or the value of their equity interests and holders of claims or interests junior to the interests in Class 8 will not receive or retain any property under the Plan on account of such junior claims or interests.

38.    The Plan does not unfairly discriminate with respect to the Rejecting Classes, and the Plan is fair and equitable with respect to the Rejecting Classes.   Therefore, the Plan meets the requirements imposed upon the Debtors under Section 1129(b) of the Bankruptcy Code.

### Other Matters

39.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e.  No party-in-interest that is a governmental unit has requested that this Court not confirm the Plan on the grounds that the principal purpose of the Plan is such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

19

40.     Other than the Plan (including previous versions thereof), there were no other plans of reorganization filed in these cases.  Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

41.     All modifications to the Plan filed, described in the Response or herein, or announced prior to the conclusion of the Confirmation Hearing, or contained in the Confirmation Order, constitute technical changes and/or changes with respect to particular Claims, and do not adversely affect or change the treatment of any other Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of votes under Bankruptcy Code section 1126, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

42.     Schedule 1 to the Plan adequately describes the Rights of Action that will be contributed to the Liquidating Trust on the Effective Date of the Plan.  Notwithstanding anything to the contrary in the Plan or in the Disclosure Statement, the provisions of the Plan that permit the Debtors, the Reorganized Debtors or the Liquidating Trustee of the Liquidating Trust to prosecute or enter into settlements and compromises of any potential litigation, including without limitation with respect to the Rights of Action, shall not have and are not intended

20

to have any *res judicata* effect with respect to any pre-petition claims and causes of action that are not otherwise treated under the Plan and shall not be a bar to asserting such claims and causes of action.

43.    Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Plan Proponents, the Committee and its members, and the Debtors and their respective directors, officers, employees, shareholders, members, agents, advisors, accountants, investment bankers, consultants, attorneys, agents, and other representatives have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

44.    The assumption of all the executory contracts and unexpired nonresidential real property leases set forth on the Contract/Lease Schedule dated as of November 1, 2005, as supplemented and amended from time to time (the "Contract/Lease Schedule"), and the rejection of all other executory contracts and unexpired leases, is a reasonable exercise of the Debtors' business judgment, is in

CH\801607.4

the best interest of the Debtors and their estates and will aid in the consummation of the Plan.  Therefore, subject to paragraph 11(B) of the Confirmation Order, the Debtors shall be authorized and deemed to have assumed the executory contracts and nonresidential real property leases identified in Contract/Lease Schedule as of the Effective Date (and pay the applicable cure amounts listed on the Contract/Lease Schedule) and to reject all other executory contracts and unexpired leases as of the Effective Date of the Plan unless otherwise indicated in the Contract/Lease Schedule, and the applicable notices ordered by this Court.  The Debtors gave due and proper notice of the assumption of each contract and lease to be assumed by means of the Contract/Lease Schedule.

45.    The agreements, settlements, transactions and transfers authorized by the by the Confirmation Order or prior orders of this Court are fair, equitable and reasonable, are entered into in good faith, are in the best interests of the Debtors, their estates, their creditors, and Holders of Interests, and help provide adequate means for implementing the Plan.  Absent the settlements incorporated in the Plan, the Chapter 11 Cases would be subject to lengthy, complex, uncertain and expensive litigation which would have delayed and threatened consummation of the Plan, distributions to Holders of Allowed Claims in the amounts provided for under the Plan, and the reorganization of the Debtors.

CH\801607.4

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1948   Filed  11/29/05   Page 22 of 29

46.     The Debtors and all parties-in-interest will be acting in good faith if they proceed to: (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and the Confirmation Order, and (ii) take the actions authorized and directed by the Confirmation Order, notwithstanding an appeal of the Confirmation Order, so long as no stay is issued and in effect pending appeal, even if they act with knowledge of the pendency of that appeal.

47.     The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, injunctions and releases set forth in Article V of the Plan, to the extent provided in the Confirmation Order.

48.     Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, this Court finds that the exculpation, injunction and releases set forth in Article V of the Plan, as modified in the Confirmation Order, are consistent with the Bankruptcy Code and applicable law.

49.     The releases set forth in the Confirmation Order are the product of substantial good faith and arms' length negotiations, are supported by adequate consideration, and are integral to the Plan.

CH\801607.4

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1948   Filed  11/29/05   Page 23 of 29

50.     The Plan (and the releases provided therein, as modified in the Confirmation Order) was approved by the Debtors' board.  Such approval was an appropriate exercise of the board's business judgment.

51.     In approving the exculpations, limitations of liability, releases and injunctions provided by Article V of the Plan as modified in the Confirmation Order, this Court has also considered:  (i) the likelihood of success of claims asserted by the Debtors or other claimants against the likelihood of success of the defenses or counterclaims possessed by the Debtors, other claimants or other potential defendants; (ii) the complexity, cost and delay of litigation that would result in the absence of these settlements, compromises, releases, waivers, discharges and injunctions; (iii) the acceptance of the Plan by an overwhelming number of the holders of Claims, as set forth in the Voting Declaration; and (iv) that the Plan, which gives effect the other compromises, releases, waivers, discharges and injunctions set forth in the Plan, is the product of extensive arms' length negotiations among the Debtors, Yucaipa and the Official Committee and the respective affiliates and current and former officers, partners, directors, employees, agents, members, stockholders, advisors (including any attorneys, financial advisors, investment bankers, accountants and other professionals retained by such Persons) and professionals of the foregoing and other parties in interest.

CH\801607.4

52.     All objections to the Plan have been withdrawn by the objecting party, overruled or resolved in the manner set forth in the Confirmation Order.

53.     The deadlines set for filing proofs of claim or requests for payment of Administrative Expense Claims and Professional Fee Claims and Postpetition Tax Claims set forth in the Plan or the Confirmation Order are reasonable and appropriate.

54.     The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

55.     The Court's retention of jurisdiction as set forth in Article IX of the Plan is in accordance with 28 U.S.C. § 157.

56.     The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and Bankruptcy Code section 1142.

*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: **11/29/2005**

CH\801607.4

U.S. Bankruptcy Court - Hawaii    #04-03063   Dkt # 1948   Filed  11/29/05   Page 25 of 29

# EXHIBIT A

## OBJECTIONS OR PURPORTED OBJECTIONS TO CONFIRMATION OF THE PLAN

| Docket Number | Objecting Party | Summary of Objection |
|---|---|---|
| 1772 | Daiichiya-Love's Bakery | 1. Daiichiya-Love's Bakery objects to the cure amount listed on the Contract/Lease Schedule.. |
| 1787 | RBS Aerospace Limited (F/K/A Lombard Aviation Capital Limited) | 1. The Plan documents fail to demonstrate that section 1129(a)(9) of the Bankruptcy Code will be satisfied because the Plan appears to lack any mechanic that would ensure that RBS's administrative expense claim will be paid in full when it is allowed.<br><br>2. The Plan does not satisfy section 1129(a)(11) of the Bankruptcy Code which sets forth a feasibility test to ensure that the debtor will be able to make all payments required to be made under the Plan and Bankruptcy Code. Among the payments that must be made in order to ensure the feasibility of a plan are payments on account of administrative claims, which are required to be paid in full under Section 1129(a)(9) of the Bankruptcy Code.<br><br>3. RBS asserts that the Debtors should be required to reserve an amount equal to the asserted amount of RBS's administrative expense claim (i.e., $785,892.35) so that such claim can be paid in full as and when it becomes an allowed claim notwithstanding the $100 cap on Company Liabilities. |
| 1798 | First Hawaiian Bank | 1. The amended Plan is unconfirmable insofar as it proposes to release non-debtors and enjoin third party claims against them. The relevant Plan provisions are 5.11, 5.12(b) and 5.13.<br><br>2. FHB seeks to preserve its contingent claims for indemnity against nondebtors, and nominal claims against the Debtors/Reorganized Debtors for the sole purpose of triggering coverage under applicable policies.<br><br>3. FHB asserts that the Plan is unconfirmable on the basis of its purported release of third party claims against nondebtor entities and an injunction against the pursuit of such claims as well as nominal claims against the Debtors to trigger liability insurance coverage, FHB, should the Court grant an order confirming the Plan over FHB's objections, will immediately appeal such order. Consequently, the 10-day stay of execution on that order pursuant to Rule 3020(e) will be essential to preserving FHB's right to appeal and seek an additional stay pending appeal pursuant to Rule 8005.<br><br>4. FHB asks that the Court clarify Section 10.10 of the Plan, pertaining to waiver of FRCP 62(a). Section 10.10 provides that the Debtors may request a waiver of the 10 day automatic stay of execution on a judgment. FHB seeks clarification that the invocation of any waiver of the Rule |

| | | | |
|---|---|---|---|
| | | | 62(a) stay under Section 10.10, will not prejudice any party's right to appeal the Confirmation Order. |
| 1800 | First Hawaiian Leasing | 1. | The Plan does not comply with Section 1123(a)(3) of the Bankruptcy Code in that it does not specify the treatment for the class that includes FHL's claim. |
| | | 2. | The Plan, in Amended Schedule 3, classifies FHL's claim as Class 1. The vague description in Section 3.04(a)(ii)-(v) of the Plan is not sufficient to enable FHL or any other creditor to know the of the Debtor's intentions with respect to this claim. |
| | | 3. | FHL's claim arises from four separate equipment leases which are not listed on the Schedule of Contracts/Leases. FHL and other creditors should not be left to guess if the leases will be rejected and how its claim will be treated. |
| 1810 | Central Pacific Bank | 1. | The release of the nondebtors and the post-confirmation injunction in Sections 5.12(b) and 5.13 Plan violate Bankruptcy Code section 524(e). The Plan violates the classification requirements of Bankruptcy Code section 1123(a)(4) and the "best interests" requirements of Section 1129(a)(7)(A) by impairing remedies of holders of claims covered by third-party insurance maintained by the Debtors. |
| | | 2. | The Plan violates the Court's order establishing a challenge deadline of November 22, 2005. |
| | | 3. | The Hawaii Lenders seek clarification from the Court that the invocation of the Rule 62(a) stay in Section 10.10, will not prejudice any party's right to appeal the Confirmation Order. |
| 1812 | Bank of Hawaii | Joinder to Central Pacific Bank's Objection | |
| 1815 | First Hawaiian Bank | Joinder to Central Pacific Bank's Objection | |
| 1820 | American Savings Bank, F.S.B | Joinder to Central Pacific Bank's Objection | |
| 1828 | Federal Express Corporation, Fedex Corporation, Fedex Services and Federal Express | 1. | The Debtors have listed seven executory contracts with one of more of the FedEx entities as contracts they intend to assume. FedEx objects because the Debtor proposes to assume the existing contract without payment of any cure amount in violation of 365(b). |
| 1831 | United States | 1. | The United States objects to the bar dates set forth in section 3.03(a)(iii)(4) of the Plan and asserts that the Debtors should exclude the United States' tax claims, if any, for 2004 and 2005 from section 3.03. Alternatively, the taxes arising from the operation of the Debtors' business should be treated as obligations incurred in the ordinary course of business. |
| | | 2. | The United States objects to the semi-annual installment payments of tax claims provided in section 3.03(b) of the Plan and alleges that under the circumstances of this case, monthly payments are appropriate. |
| | | 3. | The United States objects to the 4% interest rate provided in section 3.03(b) of the Plan and alleges that the United States |

2

| | | | |
|---|---|---|---|
| | | | is entitled to the interest rate as set forth in 26 U.S.C. §§ 6621 and 6622. |
| | | 4. | The United States objects to the discharge provision of section 5.10 of the Plan to the extent that it is broader than that provided for under the Bankruptcy Code. |
| | | 5. | Unfiled federal tax returns should not be discharged. |
| | | 6. | The injunction in section 5.10 of the Plan should not apply to future claims. |
| | | 7. | The United States objects to the Plan to the extent that it purports to expand the Debtors' discharge rights beyond the scope of 11 U.S.C. §§ 524 and 1141 by enjoining creditors' rights of recoupment and/or setoff. |
| | | 8. | The discharge and injunction provisions contained in sections 5.10 and 5.13 are impermissibly broader than permitted under 11 U.S.C. § 524 of the Bankruptcy Code and improperly bar the United States from exercising its police and regulatory powers. |
| | | 9. | The United States objects to the terms of sections 5.11, 5.12(b) and 5.13 of the Plan to the extent that these provisions purport to release and enjoin claims of creditors against parties other than the Debtors. |
| | | 10. | The United States objects to the Plan to the extent that no distribution reserve will be established for disputed unsecured claims. |
| | | 11. | The Plan is unclear as to when payment will be made on allowed claims of the Untied States.  The Plan should be modified to make clear that each claim of the United States will be paid in accordance with the Plan as soon as that individual claim is allowed. |
| | | 12. | The United States objects to the Plan to the extent that no interest will be paid on its administrative claims. |
| | | 13. | The United States objects to Article IX of the Plan to the extent that the Court shall retain jurisdiction to resolve all administrative claims. |
| 1834 | Bacon Universal Co. | 1. | Objection to the cure amount listed on the Contract/Lease Schedule |
| 1836 | United States Trustee | 1. | The releases of claims violate section 524(e) of the Plan. |
| | | 2. | The Reorganized Debtors must pay post-confirmation U.S. Trustee Quarterly Fees. |
| 1837 | PBGC | 1. | The Debtors' Plan cannot satisfy the voting requirements of Section 1129(a)(8).  Because PBGC's claims exceed one-third the amount of all unsecured claims and PBGC voted to reject the Plan, pursuant to 1126(c), Class 4 has rejected the Plan.  Thus, the Debtor cannot satisfy section 1129(a)(8)'s requirement that all impaired classes of claims vote to accept the Plan.  The Debtors' Plan cannot satisfy the cram down requirements of 1129(b)(1) because it does not appear that any of the claims in class 1 are in fact impaired or voted in favor of |

3

| | | | |
|---|---|---|---|
| | | | the Plan. |
| | | 2. | The Plan is not feasible because it cannot go effective before December 15, 2005. |
| | | 3. | The Plan is not feasible because it cannot pay in full all administrative claims and priority claims. |
| 1842 | Starwood Hotels & Resorts Worldwide, Inc. | 1. | Objection to the cure amount listed on the Contract/Lease Schedule. |
| 1845 | International Association of Machinists and Aerospace Workers, AFL-CIO | 1. | The Plan is unfair because it proposes a new plan to provide incentives to management after the Debtors' exit from bankruptcy. These incentives, the details of which have not been disclosed, are neither fair nor reasonable given the sacrifices made by IAM-represented employees. |
| | | 2. | The Plan violates applicable authority inasmuch as it proposes impermissible releases of the Debtors' officers, directors and investors. |
| 1846 | Kaiser Foundation Health Plan | 1 | Objection to the cure amount listed on the Contract/Lease Schedule. |
| 1852 | Airline Pilots Association International | 1. | The Plan violates section 1113 of the Bankruptcy Code by purporting to permit the Debtors' unilateral modification of the ALPA CBA. |
| | | 2. | The Plan purports to modify the Bankruptcy Code by subjecting the Pilot claims entitled to administrative expense status under section 503(b)(1)(A) to the payment limit in section 507(a)(3) and to general unsecured claim status. |
| | | 3. | The Plan violates section 524(e) of the Bankruptcy Code by improperly releasing and exculpating from liability non-debtor parties, including the Debtors' shareholders. |
| 1858 | International Business Machines Corporation and IBM Credit LLC f/k/a IBM Credit Corporation | 1. | Objection to the cure amount listed on the Contract Lease Schedule. |
| 1859 | Shari Chang | 1. | The Debtors failed to properly serve Ms. Chang. |
| | | 2. | The Debtors have failed to address Ms. Chang's contract. |
| | | | |

4