UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re<br><br>ALOHA AIRGROUP, INC.,<br><br>      Debtor.<br><br>---<br><br>This document relates to:<br><br>ALL CASES | Case No. 04-3063<br>Chapter 11<br><br>Re: Docket No. 1524, 1629 |
|---|---|

**MEMORANDUM DECISION REGARDING**
**DISTRESS TERMINATION OF DEFINED BENEFIT PENSION PLANS**

On October 15, 2005, Aloha Airlines, Inc. ("Aloha") and Aloha Airgroup, Inc., filed a motion for (1) authority to reject Aloha's collective bargaining agreements with all five bargaining units representing its unionized employees, including the Air Line Pilots Association ("ALPA"), and (2) the judicial finding that is a prerequisite for a "distress termination" of Aloha's defined benefit pension plans (the "Aloha DB Plans").[1] An evidentiary hearing on the

---

[1]These are the Aloha Airlines, Inc. Pilots' Fixed Retirement Plan (the "ALPA DB Plan"), the Aloha Airlines, Inc. Pension Plan for Non-Represented Employees, the Aloha Airlines, Inc. Pension Plan for Employees Represented by the International Association of Machinists and Aerospace Workers, and the Aloha Airlines, Inc. Pension Plan for Dispatchers and Assistant Dispatchers Represented

motion was held on October 28 and 31 and November 8-10, 2005, with closing arguments on November 15, 2005.

During the hearing, the parties announced that Aloha had reached tentative agreements, subject to ratification, with four of the five unions. All four agreements were later ratified.

On November 28, 2005, the day that the court's ruling was due under 11 U.S.C. § 1113(d)(2) and the first day of the hearing to consider confirmation of the debtors' plan of reorganization, ALPA and the debtors requested that the court delay its ruling to allow negotiations to continue. The next day, they announced that Aloha and ALPA had reached a tentative agreement, subject to ratification. Aloha and ALPA jointly requested that the court defer its ruling on the rejection of the ALPA collective bargaining agreement. The debtors reiterated their request for the distress termination finding.

The tentative agreement between Aloha and ALPA provides that the ALPA DB Plan will be terminated effective December 14, 2005, unless certain legislation now pending in Congress is enacted by December 31, 2005, in which case the ALPA DB Plan will be frozen rather than terminated. The legislation to which the parties refer would permit airlines an extended period to catch up on

---

by the Transport Workers Union of America.

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1984   Filed   12/05/05   Page 2 of 9

funding shortfalls in their defined benefit plans. The tentative agreement further provides that, if Congress enacts such legislation by December 31, 2006, Aloha and ALPA would cooperate to reinstate the ALPA DB Plan.

At the insistence of the plan investors, the plan provides that the plan must become effective by December 15, 2005, or it will never become effective. In order to satisfy this condition, Aloha requested at the confirmation hearing that the court either determine that the effective date of the termination of the Aloha DB Plans will be December 14, 2005, or compel the Pension Benefit Guaranty Corporation ("PBGC") to complete its part of the distress termination process by that date. PBGC objected to this request. The court permitted PBGC and Aloha to brief this issue on an expedited schedule.

Legal Standard

Under the Employees Retirement Income Security Act ("ERISA"), the Pension Benefit Guaranty Corporation ("PBGC") insures certain benefits owed by certain defined benefit pension plans.

ERISA provides that there are only a few ways to terminate a defined benefit plan. 29 U.S.C. § 1341(a)(1).

In a "standard termination" under section 1341(b), the plan's assets are used to purchase annuities or establish other arrangements which replicate the

benefits that the plan would otherwise pay. Id. § 1341(b)(3)(A). There is no dispute that the assets of the Aloha DB Plans are insufficient to fund a standard termination.

PBGC also has the power to institute involuntary proceedings if it determines that the plan's assets are insufficient or in danger. Id. § 1342. PBGC has not commenced termination proceedings with respect to any of the Aloha DB Plans.

The final method is a "distress termination" pursuant to section 1341(c). In order to effect a termination based on reorganization distress, a plan sponsor must satisfy the four requirements of section 1341(c)(2)(B)(ii):

> (I) [the plan sponsor] has filed, or has had filed against such person, a petition seeking reorganization in a case under Title 11 or under any similar law of a State or political subdivision of a State . . .,
>
> (II) such case has not, as of the proposed termination date, been dismissed,
>
> (III) such person timely submits to the corporation any request for the approval of the bankruptcy court (or other appropriate court in a case under such similar law of a State or political subdivision) of the plan termination, and
>
> (IV) the bankruptcy court (or such other appropriate court) determines that, unless the plan is terminated, such person will be unable to pay all its debts pursuant to a plan of reorganization and will be unable to continue in business outside the chapter 11 reorganization process

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1984   Filed  12/05/05   Page 4 of 9

and approves the termination.

Both the bankruptcy court and PBGC play important roles in the distress termination process. The bankruptcy court determines whether the fourth requirement is met. PBGC determines whether the other requirements for a distress termination are satisfied.

### The Distress Termination Finding

The evidence adduced during the six days of evidentiary hearings overwhelmingly established that neither of the debtors can continue in business, let alone successfully reorganize themselves, without a substantial new investment; that the debtors conducted an extensive and diligent search for investors; and that the only investor to make a complete and serious proposal to invest conditioned its investment on termination of the Aloha DB Plans. Thus, the debtors have proven, by clear and convincing evidence, that unless each of the Aloha DB Plans is terminated, both of the debtors will be unable to pay all of their debts pursuant to a plan of reorganization and will be unable to continue in business outside the chapter 11 reorganization process, and that the termination of the Aloha DB Plans should be approved.

PBGC argues that the court should reconsider this finding based upon an event that occurred after the record was closed, namely the tentative agreement

5

with ALPA.  PBGC points out that the tentative agreement between Aloha and ALPA, to which the investors have consented, provides that the ALPA DB Plan may frozen rather than terminated if certain legislation passes.  I do not accept this argument.  The plan investors remain unwilling to invest under current law unless all of the Aloha DB Plans are terminated.  The law might change in a way that could change the investors' decision, but it would be speculative and inappropriate to assume that the law will change in such a fashion.

Termination Date

29 U.S.C. § 1348(a) provides that, in a distress termination under section 1341(c), the effective date of the termination is the date established by the plan administrator and agreed to by PBGC or, if the plan administrator and PBGC cannot agree, the date fixed by "the court," id. § 1348(a)(2), (4).

PBGC argues that it is premature to determine that PBGC and the plan administrator will not agree on a termination date.  It is abundantly clear from the record that the debtors cannot agree to a termination date later than December 14, 2005, because any later date would jeopardize the investment they must have in order to survive.  PBGC has made it equally clear that PBGC will not agree to a termination as early as December 14, 2005.  Section 1348(a)(4) empowers the court to break this impasse.

6

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1984   Filed  12/05/05   Page 6 of 9

Aloha argues that the bankruptcy court has the authority to fix the termination date. PBGC argues that "the court" to which section 1348(a)(4) refers is a district court in which PBGC has filed a termination action under section 1342. PBGC's position is inconsistent with the language and structure of the statute. Section 1348(a)(4) provides that, "in the case of a plan terminated under section 1341(c) or 1342 of this title in any case in which no agreement is reached between the plan administrator and [PBGC]," the termination date is "the date established by the court." The only "court" mentioned in section 1341(c) is the bankruptcy court (or other court in which the reorganization proceedings are pending). Therefore, in a section 1341(c) distress termination, the bankruptcy court is the "court" with power to fix the termination date under section 1348.

PBGC contends that, in a distress termination, PBGC must commence proceedings under section 1342 to effect the termination. Because section 1342 proceedings are brought in the district court, PBGC reasons that the district court is the "court" to which section 1348 refers. The premise of this argument is incorrect. PBGC need not commence section 1342 proceedings in a distress termination. See 29 U.S.C. § 1341(b). In such a case, section 1341(c)(3)(B)(iii) permits PBGC to commence a section 1342 proceeding only if PBGC cannot determine, based on the available information, whether the plan assets are

7

sufficient to cover the promised benefits. Here PBGC is able to determine, and has repeatedly insisted in this case, that the assets of the Aloha DB Plans are not sufficient.

In fixing a termination date, the court must consider only two factors: the expectations of beneficiaries and the financial interests of PBGC. <u>In re Pension Plan for Employees of Broadway Maintenance Corp.</u>, 707 F.2d 647, 652 (2d Cir. 1983). All of the plans' beneficiaries have agreed to the termination of the plans as of December 14, 2005. An early termination of the Aloha DB Plans is in PBGC's interest because it would halt the accrual of additional benefits and thereby reduce PBGC's potential exposure. PBGC has offered no reason why a later date would be in its interest. The early termination date is not intended to, and will not, impair PBGC's rights, if any, to impose control group liability on parties related to the debtors or to take appropriate action if Aloha institutes an abusive follow-on plan.

<u>Compelling PBGC to Complete Its Review by December 14, 2005</u>

Aloha argues that section 1142(b) of the Bankruptcy Code empowers the bankruptcy court to compel PBGC to complete its part of the distress termination process by December 14, 2005. My reading of the applicable ERISA provisions obviates consideration of this argument.

A separate order granting Aloha's request will enter upon

U.S. Bankruptcy Court - Hawaii   #04-03063   Dkt # 1984   Filed  12/05/05   Page 8 of 9

presentation.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 12/05/2005

9